| | | |
|---|---|---|
| Mindy Jaye Zied-Campbell, on behalf of herself and Dennis John Campbell, | : : : | |
| Petitioners | : : | |
| v. | : : : | No. 451 M.D. 2022 Submitted: March 8, 2024 |
| The Commonwealth of Pennsylvania; PDHS Secretary/Acting Secretary in her official capacity, The Pennsylvania Department of Human Services, and all the Departments contained within the PDHS to include, but is not limited to the Philadelphia County Assistance Office(s), the PDHS Hearings & Appeals Office, | : : : : : : : : : : : | |
| Respondents | : | |

**BEFORE:** **HONORABLE RENÉE COHN JUBELIRER,** President Judge
**HONORABLE ELLEN CEISLER,** Judge
**HONORABLE MATTHEW S. WOLF,** Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED:** September 3, 2024

Before this Court is a petition for review (Petition) filed in both our appellate and original jurisdiction by Mindy Jaye Zied-Campbell (Zied-Campbell) on behalf of herself and Dennis John Campbell (Campbell) (together, Petitioners). The appellate portion petitions for review of the August 10, 2022 Final Administrative Action Order that affirmed the June 10, 2022 Order of an Administrative Law Judge (ALJ) of the Pennsylvania Department of Human Services (Department), Bureau of Hearings and Appeals (BHA). The ALJ addressed three separate appeals filed by Zied-Campbell on behalf of Campbell, dismissing one as moot, sustaining one, and

denying the third. While Petitioners included claims in the appeal arguing that they had been discriminated against based on their disabilities, the ALJ held that he lacked jurisdiction to consider those claims.

In the original jurisdiction part of the Petition, Petitioners allege claims of discrimination based on disability against The Commonwealth of Pennsylvania (Commonwealth), the Department's Secretary/Acting Secretary in her official capacity (Secretary), the Department, "and all the Departments contained within [the Department] to include[,] but [] not limited to the Philadelphia County Assistance Office(s) [(CAO)] [(Philadelphia CAO)], [and] the [BHA]," (collectively, Respondents). (Petition at 3.) They further assert that they have been retaliated against by Respondents. Respondents filed a demurrer, maintaining the Petition should be dismissed because Petitioners' allegations fail to state a claim upon which relief can be granted. In addition, Petitioners filed an Application for Summary Relief (Application), to which Respondents have filed an answer.[1]

The parties have fully briefed the issues, both in our appellate and original jurisdiction, and those issues are now ready for disposition. After setting forth the relevant background relating to Petitioners, Respondents, and their ongoing relationship, we will address Petitioners' appellate claims first.

---

[1] Petitioners filed this Application on December 11, 2022, and filed a supplement thereto on December 23, 2022. In a memorandum and order dated February 1, 2023, this Court treated the two filings as one and directed Respondents to file an answer thereto. Also contained within Petitioners' Application was an objection to the appearance of Respondents' counsel, to which Respondents filed an answer in accordance with an order by this Court dated March 21, 2023. Upon review of Petitioners' objection to Respondents' counsel and Respondents' answer that Petitioners' objection comprises of scandalous, impertinent, and defamatory material, we are not persuaded that Respondents' counsel has engaged in conduct that warrants precluding his appearance. Therefore, Petitioners' Application in this regard is denied.

# I. BACKGROUND

The following facts, averred in the Petition, are, in general, undisputed unless otherwise indicated. Petitioners are married, reside in Philadelphia, are individuals with disabilities, and have received, among other benefits, Medical Assistance (MA) from the Department. Campbell, whose diagnoses include dementia, is cared for at home by Zied-Campbell, with the assistance of a home nurse.[2] (Petition ¶¶ 30, 154.) Campbell needs assistance with both his physical care and with communicating. (*Id.* ¶ 30.) Zied-Campbell holds a general Power of Attorney for Campbell and acts as Campbell's representative in matters relating to his receipt of public benefits. Petitioners are "qualified individual[s] with a disability" for the anti-discrimination purposes of Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12132,[3] and Section 504(a) of the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 794(a).[4]

---

[2] Petitioners' filings, both in the appellate matter and in the original jurisdiction matter, are of great length and set forth a very detailed history of, among other matters, their disabilities, their receipt of various public benefits from both the Commonwealth and the Social Security Administration (SSA) over time, and, in some instances, the discontinuation of some of those benefits at various times. The Court has thoroughly and carefully reviewed those filings, including the exhibits attached thereto, and appreciates the care Zied-Campbell has taken to set forth that history. Indeed, the Court granted an accommodation request to allow Zied-Campbell to file a brief that exceeds the word limit set forth in Pennsylvania Rule of Appellate Procedure 2135(a)(2), Pa.R.A.P. 2135(a)(1) (imposing a 14,000-word limit on briefs). (Order, 7/14/2023.) For the purposes of this litigation, however, the Court includes only the background and history relevant to resolving the claims presently before the Court.

[3] Title II, or Section 202, of the ADA states: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

[4] Section 504(a) of the Rehabilitation Act provides, in pertinent part: "No otherwise qualified individual with a disability in the United States, . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

The Department is responsible for implementing various public benefit programs, including MA benefits, in accordance with federal and state statutes and regulations. The Department relies on CAOs to provide services and assistance to applicants and beneficiaries located within a CAO's boundaries. Petitioners' current local CAO is the Philadelphia CAO, which has multiple offices.[5] The CAO is responsible for, among other tasks, assisting with the completion of benefit applications, accepting applications, implementing renewals and recertifications for benefits, and making initial determinations of eligibility. The notices and communications at issue in this matter came primarily from the Philadelphia CAO, although some were issued directly by Department officials or its employees. If an individual is unhappy with a determination, they can request a fair hearing from the BHA, which will appoint an ALJ to hold a hearing and adjudicate the appeal.

The primarily relevant time period here is between May 2021 through August 2022, which is when an initial notice relating to the recertification of Petitioners' MA benefits was sent and the BHA's affirmance of the ALJ's June 2022 decision. Relevantly, on May 4, 2021, the Philadelphia CAO sent Zied-Campbell a renewal packet related to MA benefits, seeking, among other information, "[p]roof of things that have changed since [her] last application or renewal." (Certified Record (C.R.) at 91.) Zied-Campbell questioned the renewal packet given the COVID-19 health emergency, (*id.* at 147), and the Acting Director of Office of Income Maintenance (OIM) responded that a renewal was to have been completed in August 2020, but due to the public health emergency, Petitioners would continue to receive MA

_____

[5] Petitioners' filings and briefs to this Court separately reference several offices of the Philadelphia CAO by their names, i.e. Boulevard CAO on Frankford Avenue or Parkside CAO. However, because all of the offices fall under auspices of the Philadelphia CAO, we will use that designation for all of its offices, unless otherwise required.

4

benefits, (*id.* at 99). We now turn to the particular facts and arguments related to Petitioners' appeal to this Court.

## II. CAMPBELL'S APPEAL FROM THE ALJ'S DETERMINATION

### A. *CAO Determinations at Issue*

Since before July 2021, Campbell was receiving MA benefits. (ALJ's Decision, Findings of Fact (FOF) ¶ 1.) On July 14, 2021, Campbell filed an application for a Medicaid Home and Community-Based Services (HCBS) waiver through an Independent Enrollment Broker (PA IEB). (*Id.* ¶¶ 2-3.) The HCBS waiver is authorized by Section 1915(c) of the Social Security Act, 42 U.S.C. § 1396n(c), and permits states to provide various home and community-based services to assist Medicaid, i.e., MA, beneficiaries to remain living in the community rather than being placed in institutions. (*Id.* ¶ 3.) Part of the application process for an HCBS waiver is a functional eligibility determination relating to whether the applicant meets the level of care for a particular facility and a financial eligibility determination. (*Id.* ¶¶ 4, 6.) The former is performed by an "Independent Assessment Authority," here, the Philadelphia Corporation of Aging (PCA),[6] and the latter is performed by a CAO. (*Id.* ¶¶ 5-6.) The PCA completes the functional eligibility determination and sends it to the PA IEB, which in turn submits it to the CAO. (*Id.* ¶ 6.) The CAO then makes the final decision on the HCBS waiver based on both the functional eligibility determination and the financial eligibility determination. (*Id.*) On or about August 11, 2021,[7] the Philadelphia CAO asked Zied-Campbell to verify certain of Campbell's financial resources from between

---

[6] Petitioners do not aver that the PCA is associated with the Department or the Philadelphia CAO.

[7] Although the ALJ gave the date of this notice as being August 3, 2021, in his findings of fact, it is apparent from the face of the document that it is dated August 11, 2021. (C.R. at 96-99.)

5

2016 and July 2021. (C.R. at 96-97; FOF ¶¶ 7-9.) This verification was to be returned to the Philadelphia CAO by August 23, 2021, but was not returned by that date. (FOF ¶¶ 9-10.) Instead, Zied-Campbell sent a letter questioning whether the Philadelphia CAO, rather than the Department, had actually sent the verification request, due to its inclusion of a self-addressed, pre-postage paid envelope to be used for the return of the information; claiming the documentation sought was unnecessary and some of which the Philadelphia CAO already had in its possession; and noting that Campbell had been approved for MA benefits during the time period of the records sought. (C.R. at 128-29.)

On or about August 25, 2021, the Philadelphia CAO sent a notice addressed to Campbell. (*Id.* at 141.) This notice advised Campbell that he did not qualify for the MA/HCBS because the Philadelphia CAO had "not receive[d] the information [he] was asked to provide" in order "to decide if [he] qualif[ied]" for that benefit. (*Id.*) This notice indicated that if Petitioners did not agree with the decision, they could request a fair hearing on or before September 24, 2021. (*Id.*) Also in August 2021, the PA IEB concluded that Campbell did not satisfy the level of care requirements for the HCBS waiver program, and separately advised Campbell of the same. (FOF ¶¶ 12-13.) Petitioners filed a hearing request on September 2, 2021, but it is unclear whether a hearing was ever scheduled on this matter. Relatedly, Petitioners filed a 268-page brief inclusive of exhibits on September 14, 2021. (C.R. at 245-513.)

On or about October 7, 2021, the Philadelphia CAO sent another notice to Campbell, advising that he did "not qualify for benefits [that he] applied for on 07-13-21 [] because [he] [was] currently receiving benefits." (C.R. at 151-52; FOF ¶ 14.) As of that date, Campbell "was actively receiving MA benefits." (FOF ¶ 15.)

6

Campbell, through Zied-Campbell, filed an appeal of this notice on October 29, 2021, which was docketed as case number 512955245 013 (Appeal #13). (FOF ¶¶ 16-17.) In that appeal, Petitioners asserted that they had not filed an application for benefits on July 13, 2021, that they had already filed an appeal in September 2021 relating to the August 2021 denial of benefits, and that had the Philadelphia CAO wanted to deny benefits on that application, it should have sent the notice prior to their September 2021 appeal. (C.R. at 155-56.) Petitioners incorporated, by reference, the 268-page brief previously filed.

The Philadelphia CAO received another application for MA/HCBS for Campbell from PA IEB in November 2021. (FOF ¶ 18.) This time Campbell was determined by the PCA to meet the functional eligibility requirements for that program, and the Philadelphia CAO sent out a new verification request seeking the information previously requested in August 2021 to ascertain Campbell's financial eligibility for the program. (*Id.* ¶¶ 19-20.) Subsequently, the Philadelphia CAO was forwarded an email from PA IEB in which Zied-Campbell directed that Campbell's application for HCBS benefits be closed.[8] (*Id.* ¶ 21; C.R. at 166.)

On or about December 7, 2021, the Philadelphia CAO sent a notice advising that Campbell did not qualify for the MA/HCBS benefits because he had not provided the verification information. (FOF ¶¶ 22, 24.) On or about December 14, 2021, the Philadelphia CAO sent a notice indicating Campbell did not qualify for MA/HCBS because Campbell had advised that he did not want that benefit anymore.

---

[8] Specifically, this email was from Zied-Campbell to a PA IEB representative, indicating that she could not "take any more paperwork or negative feedback from ANY [CAO][,]" that she had not "realize[d] that this was going to go to a CAO once again[,]" and that she was "too tired [and] too old for any more negative feedback." (C.R. at 166.) Thus, Zied-Campbell closed the email with "[p]lease close the application." (*Id.*) The PA IEB representative responded, stating "[t]he application has been closed[,]" and that "all the [HCBS w]aivers the [PA] IEB oversees . . . require[d] a Medicaid Waiver application and those [were] processed by the [CAO]." (*Id.*)

7

(*Id.* ¶ 24.) Campbell filed appeals, through Zied-Campbell, requesting a hearing and reiterating that they had not applied for HCBS benefits through the Philadelphia CAO but through PA IEB. (C.R. at 214.) The appeal from the December 7 notice was docketed at case number 512955245 014 (Appeal #14), and the appeal from the December 14 notice was docketed at case number 512955245 015 (Appeal #15.)

In Appeal #14, Zied-Campbell raised claims that the Philadelphia CAO and the Department had violated Petitioners' due process rights and engaged in retaliation and discrimination based on their disabilities in numerous ways, including by requiring Zied-Campbell to complete forms in violation of Title II of the ADA and Section 504 of the Rehabilitation Act. (*Id.* at 182.) Additionally, Zied-Campbell contended that a December 7, 2020 Operations Memorandum issued by the Department's Director of Operations to CAO directors, relating to the cessation of MA benefits if renewal or verification forms were not received, was contrary to the United States Congress's intent that benefits should continue during the COVID-19 pandemic and an order of this Court issued on January 18, 2021, in separate litigation.[9] (*Id.*)

Telephone hearings on the appeals were initially scheduled but were eventually consolidated to a single telephone hearing at Campbell's request, set forth in a variety of motions filed by Zied-Campbell. (ALJ's Decision at 1, 22.) Additionally, the BHA granted Zied-Campbell a continuance and her request to not appear at the hearing and rely on her written brief. (*Id.*) Zied-Campbell submitted

_____

[9] *See Zied-Campbell v. Commonwealth of Pa.* (Pa. Cmwlth., No. 730 M.D. 2018, filed Jan. 28, 2021) (per curiam order) (stating that "in their Status Report dated November 25, 2020, Respondents indicate that Petitioner 'requests an injunction . . . to keep her [MA] benefits open" and that Zied-Campbell's "medical coverage remains open during the pandemic pursuant to [S]ection 6008(b)(3) of the []Public Law 116-127 Families First Coronavirus Response Act of 2020,[] (134 Stat. 146; 3/18/2020 enacted H.R. 6201).'")

8

a 512-page "brief" on February 7, 2022, which included the original 268-page brief and 28 exhibits, identified as Exhibit A-32, a 40-page motion for summary judgment, and an additional 31 exhibits in support of Campbell's appeals. The telephonic hearing was held on March 9, 2022, at which Petitioners proceeded "via" their brief, and the Department was represented by an Income Maintenance Case Worker for Philadelphia CAO (Case Worker). (*Id.*) Case Worker testified about Campbell's various applications and denials and attempted to introduce a copy of the email Zied-Campbell sent to PA IEB regarding withdrawing the November 2021 application for MA/HCBS for Campbell, but the ALJ did not admit this exhibit because it had not been sent to Petitioners prior to the hearing. (C.R. at 561-62.) However, the ALJ noted that this email was one of the exhibits offered by Petitioners, Exhibit A-18, and, therefore, had already been admitted into the record. (*Id.*)

*B. ALJ's Decision*

The ALJ listed the issues in Campbell's appeals as follows. For Appeal #13, "[w]hether the CAO properly proposed to deny [Campbell's] application for . . . MA[] benefits" in the October 7, 2021 notice "because [Campbell] was already receiving MA benefits." (ALJ's Decision at 3.) For Appeal #14, "[w]hether the CAO properly proposed to deny [Campbell's] application for MA/[HCBS] benefits" in the December 7, 2021 notice "because [Campbell] failed to provide verification." (*Id.*) For Appeal #15, "[w]hether the CAO properly proposed to deny [Campbell's] application for MA/HCBS benefits" in the December 14, 2021 notice "because [Campbell] withdrew the application for benefits." (*Id.*)

The Department's response, through Case Worker, was that the October 7, 2021 notice was proper because the CAO was required to send a notice when the PA

9

IEB denied the HCBS application because Campbell did not meet the level of care requirements, even though PA IEB had sent its own notice. (*Id.* at 6.) As to the December 7, 2021 notice, Case Worker testified that this related to the July 2021 application for MA/HCBS and Campbell's failure to provide verification related to that application. (*Id.*) Finally, Case Worker stated that the December 14, 2021 notice related to the November 5, 2021 application for MA/HCBS benefits, for which the Philadelphia CAO had requested verification, but also for which it had received notice from the PA IEB that Petitioners did not want to proceed with the application. (*Id.*)

The ALJ then summarized Petitioners' brief submitted in place of Zied-Campbell's appearance and the exhibits attached thereto. Initially, the ALJ observed that the brief was offered as an exhibit, A-32, but that he would "not include [it] as an exhibit." (*Id.*) The ALJ then addressed the contents of the brief, listing the attached exhibits and observing that some of those documents had "already [been] entered into the hearing record as exhibits." (*Id.* at 6-7.) The ALJ expressly acknowledged Petitioners' multiple claims of discrimination and due process violations against the Department and the Philadelphia CAO that were set forth in the 10 issues discussed in the brief. (*Id.* at 7, 22-24.)

The ALJ addressed each of Petitioners' claims. With respect to their discrimination claims, the ALJ explained that the Department's

> [r]egulations [(Regulations)] at 55 Pa. Code § 275.1(a)(4)(i) authorize [the] BHA with jurisdiction to conduct administrative law hearings only when a Department . . . Agency or Provider has taken one or more of the following actions: a denial, suspension, or discontinuance in whole or in part; a change in the amount of payment; a denial, discontinuance, reduction or exclusion from a Departmental service program including the failure to take into account the client's choice of

10

a service or a determination that he must participate in a service program.

(*Id.* at 22.) Under this Regulation, the ALJ held he had "no jurisdiction to settle [] discrimination complaint[s] against the Department." (*Id.* at 22-23.)

With regard to Petitioners' due process complaints related to the Department not responding to their requests relating to a renewal packet sent to them in May 2021 and then allegedly discontinuing their MA benefits, the ALJ found no merit to those complaints because "[t]he hearing record d[id] not reflect that the MA benefits for [Petitioners] were ever discontinued" and were "still active." (*Id.* at 23.) The ALJ held that the denials at issue related to applications for HCBS benefits, not MA benefits. (*Id.*) The ALJ cited the same reason, that Petitioners' MA benefits were never discontinued, to find that other of Petitioners' arguments, related to the Department or the Philadelphia CAO violating the Families First Coronavirus Response Act (FFCRA)[10] by attempting to stop their benefits during the pandemic or by misinterpreting an operations' manual, were without merit.

With regard to Petitioners' assertion that the FFCRA's requirements were being too restrictively interpreted when the Philadelphia CAO sought verification of Petitioners' financial resources, the ALJ held that this request related to Campbell's application for HCBS benefits, not the MA benefits, which were never discontinued. (*Id.* at 23-24.) The ALJ reasoned that the resource verification needed for HCBS benefits differed from that for MA benefits and that Zied-Campbell "did not contend that [they] could not obtain the bank statements," but that the "accounts were hacked and . . . had to be closed and new accounts [] opened." (*Id.* at 24.) Moreover, Zied-Campbell contended that, although they could provide verification of the accounts'

---

[10] Pub.L. No. 116-127, 134 Stat. 178 (2020).

closure and new accounts' statements, those "bank statements were not necessary" because MA benefits had been granted since 2016, which the ALJ rejected. (*Id.*) The ALJ held that these verification requests were in accord with Section 178.104(c) of the Regulations, 55 Pa. Code § 178.104(c), "requir[ing] a resource look back period of sixty (60) months for HCBS," which differs from a MA benefits' resource determination. (*Id.*) As for Zied-Campbell's contention that they had good cause for not providing their bank account information, the ALJ was not persuaded, citing his prior discussion of the verification requirements. (*Id.*)

With these holdings set forth, the ALJ addressed the merits of Campbell's appeals. As for Appeal #13, which related to the October 7, 2021 notice indicating that Campbell did not qualify for MA benefits because he was already receiving benefits, the ALJ found the notice to have been unnecessary and misleading. (*Id.*) According to the ALJ, the standing practice of the Philadelphia CAO to send a "duplicate notice" for informational purposes after the PA IEB denies an HCBS application to advise that the MA benefits remained active is not required by the Regulations and had resulted in Petitioners' belief that Campbell's MA benefits were being discontinued and, therefore, the appeal. (*Id.* at 25.) While the ALJ concluded that the October 7, 2021 notice was unnecessary, any order relating to that notice he would issue would have no legal force or effect because Campbell's MA benefits remained active and there had been no period of closure for those benefits. Thus, because Campbell "did not suffer any loss of coverage," "the ALJ ha[d] no option but to dismiss Appeal #[]13 as moot." (*Id.* (citing *Britt v. Dep't of Pub. Welfare*, 787 A.2d 457, 460 n.5 (Pa. Cmwlth. 2001) ("[C]ourts will not enter judgments or decrees to which no effect can be given.")).)

12

As to Appeal #14, which challenged the December 7, 2021 notice advising of the denial of Campbell's July 2021 application for HCBS for lack of verification, the ALJ similarly found this notice to be "unnecessary" and "defective." (*Id.*) This notice was the "fourth" rejection of the July 2021 HCBS application, the ALJ explained, three by the Philadelphia CAO and one by PA IEB, and the ALJ questioned Case Worker's testimony that this denial was related to the July 2021 application as being flawed. (*Id.* at 25-26.) The ALJ observed that requiring verification of Campbell's resources for the HCBS directly from Petitioners was permissible under Section 201.1 of the Regulations, 55 Pa. Code § 201.1 (reflecting the policy that clients are "the primary source of information [for] establishing eligibility for financial assistance"). (*Id.* at 26.) And, because the reason given by Zied-Campbell for not providing the verification was that "she felt it was unnecessary," and as an applicant is the sole source of information, the ALJ found "the CAO [wa]s correct to deny the application." (*Id.*) Nonetheless, the ALJ held that the circumstances that led to the issuance of this notice, five months after the application, were not clear and, because a CAO must sufficiently explain the issuance of a notice, he directed the Philadelphia CAO to "void the December 7, 2021 [n]otice and reissue a new notice confirming the specific CAO actions that were taken." (*Id.* at 26-27.) Accordingly, the ALJ sustained Appeal #14.

Finally, the ALJ addressed Appeal #15, of the December 14, 2021 notice denying Campbell's November 2021 application for HCBS based on the Philadelphia CAO receiving notice that Campbell no longer wanted the benefits. (*Id.* at 27.) Citing Section 125.84(e)(2)(iii) of the Regulations, 55 Pa. Code § 125.84(e)(2)(iii), indicating that "[t]he application process will end, and the application be disposed of, when . . . [t]he applicant withdraws or fails to complete

13

the application[,]" and the email from Zied-Campbell to PA IEB, forwarded to the Philadelphia CAO, asking for the November 2021 HCBS to be closed, the ALJ found that the December 14, 2021 notice was proper. (*Id.* at 27 (citing Exhibit A-18).) Thus, the ALJ denied Appeal #15.

The ALJ did not separately reference the motion for summary judgment filed on February 7, 2022, and this motion is not contained in the certified record. However, all of the exhibits attached to the motion for summary judgment are included in that record, are identified, and in some instances, were relied upon in the ALJ's Decision. The motion for summary judgment is attached to the Petition.

By Final Administrative Action Order dated August 10, 2022, the BHA affirmed the ALJ's Decision. Petitioners filed the Petition on September 7, 2022, challenging, in part, the ALJ's Decision.[11]

### C. Parties' Arguments on Appeal

#### 1. Petitioners' Arguments

Petitioners' appellate arguments relate primarily to challenging: (1) the ALJ's manner of proceeding in this matter, which they allege denied them their due process rights, and (2) the ALJ's conclusion that he lacked jurisdiction to resolve Petitioners' discrimination claims against the Department and the Philadelphia CAO. On the first issue, Petitioners cite their belief that the ALJ did not consider their entire 512-brief and exhibits, did not "put[ the 268-brief] into the record," did not put other filings in the record, such as Petitioners' motions that were discussed in the ALJ's

---

[11] The Court's review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, and whether necessary findings of fact are supported by substantial evidence. *Perna ex rel. Bekus v. Dep't of Pub. Welfare*, 807 A.2d 310, 312 n.3 (Pa. Cmwlth. 2002). Substantial evidence is evidence that "a reasonable mind can accept as adequate to support a conclusion." *Feldbauer v. Dep't of Pub. Welfare*, 525 A.2d 837, 839 (Pa. Cmwlth. 1987).

14

Decision (which are attached to Petitioners' Appellate Brief), and "took testimony from a different CAO[.]" (Petitioners' Appellate Brief (Br.) at 2.) Petitioners observe that they did not file an application for HCBS benefits, but to obtain "a health care aide to go with [Campbell] to the YMCA," and that Case Worker did not work at the relevant Philadelphia CAO office. (*Id.* at 2, 6, 20-21, 30, 32.) These procedural missteps, along with the Department's delayed submission of the certified record in this matter,[12] Petitioners contend, have resulted in a denial of due process and a breakdown in the administrative process that should render the ALJ's "[D]ecision or proceeding null or invalid." (*Id.* at 3.) Alternatively, they argue this Court should resolve all the issues contained within those filings in its original jurisdiction, rather than its appellate jurisdiction. (*Id.* at 23.)

On the second issue, Petitioners argue that Section 107.4(c)(2)(ii) of the Regulations, 55 Pa. Code § 107.4(c)(2)(ii), gives the BHA jurisdiction

> to make a decision as to whether an individual has been discriminated against and/or to either revise said statute and/or to put it into effect, and ORDER the [Department] to place it on [its] website or to send out NOTICES which reflect that right, or alternatively to direct the individual(s) who believe they are being discriminated against the proper avenue where they can obtain relief.

(*Id.* at 4 n.1 (emphasis omitted).) Petitioners also question whether they could receive a fair hearing on the discrimination arguments because, they argue, the underlying decisions from the ALJ and the BHA show that they have been unfairly treated and discriminated against thereby. (*Id.* at 32-33, 37.)[13]

---

[12] The Department was ordered to submit the Certified Record within 30 days of this Court's February 1, 2023 Order, but it was certified to this Court on July 11, 2023.

[13] Petitioners' brief also asserts that the issue before the ALJ was not the HCBS applications, but a July 15, 2021 letter from the Department's Director of OIM, relating to both of **(Footnote continued on next page…)**

15

2. Respondents' Arguments

Respondents argue, simply, that the Philadelphia CAO, and therefore the Department, correctly determined that Campbell was not eligible for the HCBS waiver program because Campbell did not meet the level of care requirements, Petitioners failed to verify their resources, and Petitioners later withdrew the application for those benefits. (Respondents' Appellate Br. at 2, 9.) This matter, Respondents assert, is limited to the decision on the three appeals ruled upon that related to the denial of Petitioners' applications for Campbell to receive additional HCBS benefits. (*Id.* at 3, 10-12.) They observe that Petitioners were both receiving MA benefits prior to the ALJ's Decision and BHA's affirmance, and those benefits "remained open, ongoing, and uninterrupted." (*Id.* at 3, 6.) Respondents assert that "[m]ost issues raised by Petitioners in the brief and motions submitted to BHA and this Court were based []on the perceived closure of MA benefits, which never occurred, and perceived wrongs for not granting benefits or excuse verification requirements[.]" (*Id.* at 12.) They argue that Petitioners failed to provide the required verification information and that such information was in Petitioners' control. (*Id.*) According to Respondents, Petitioners' remaining arguments are without support in law or fact. (*Id.*) Because Petitioners failed to meet the eligibility requirements for the HCBS benefits at issue, or withdrew Campbell's application for those benefits, Respondents argue there was no error or abuse of discretion in denying those benefits.

---

them having "to complete a renewal [of] resource verification . . . to determine on-going eligibility" for their MA benefits. (Petitioners' Appellate Br. at 7-8.) However, Petitioners do not argue they timely appealed or challenged this letter, only that it was "attached to the 2/7/22 brief[, the 512-page brief.]" (*Id.*) Further, to the extent Petitioners assert they were challenging general statements in the "multiplicity" of notices indicating that they did not qualify for MA benefits, (*see id.* at 10), nothing in the record contradicts the ALJ's finding, based on the credited testimony of Case Worker, that Petitioners' MA benefits were not discontinued.

16

### 3. Petitioners' Reply Brief

Petitioners respond that "[t]he Philadelphia Blvd. Frankford [CAO] should have been the only [CAO] to issue notices and/or correspondence to [Petitioners] and/or testif[y] at the hearing"; thus, Case Worker, who did not work at that office, should not have been able to give testimony as to Petitioners' benefits. (Petitioners' Reply Br. at 4-5, 13-14.) They assert any verification that took place by the Philadelphia CAO was invalid, as Campbell himself had no contact with that, or any, entity, and reiterate that they had not applied for HCBS benefits but for benefits to obtain a home health aide. (*Id.* at 5-6, 10.) Petitioners note that Respondents acknowledge that the 512-page brief was filed, but do not explain why not all of that filing was placed into the certified record. They argue that, had they not appealed, their MA benefits would have "undoubtedly terminated." (*Id.* at 9 n.5.) In addition, Petitioners cite Section 107.3(c)(2) and (c)(3) of the Regulations, 55 Pa. Code § 107.3(c)(2)-(3), which require nondiscrimination by Department personnel in the processing of applications, as granting the BHA, and therefore the ALJ, jurisdiction over discrimination claims, and in support of their claim that they had been discriminated against. (*Id.* at 8-9.) They argue that the capable of repetition and evading review exception to the mootness doctrine is applicable, asserting that the Philadelphia CAO has since issued a decision stating that Campbell no longer qualified for MA based on his failure to submit information as of October 22, 2023. (*Id.* at 15-18, 21.)

### D. Discussion

#### 1. BHA's/ALJ's Jurisdiction over Discrimination Claims

Petitioners rely on Sections 107.3 and 107.4 of the Regulations to argue that the ALJ had jurisdiction over their discrimination claims. The ALJ held that he

17

lacked the authority to resolve those claims because, pursuant to Section 275.1(a)(4)(i) of the Regulations, the BHA has "jurisdiction to conduct administrative law hearings only when a Department . . . Agency or Provider has" denied, suspended, or discontinued benefits in whole or in part, changed the amount of payments, or denied, discontinued, reduced, or excluded an individual from a Department service. (ALJ's Decision at 22.) As the discrimination claims presented in Campbell's appeals did not fall within these categories, the ALJ reasoned he lacked jurisdiction. (*Id.* at 22-24.)

The proceedings before the ALJ were in response to the **appeals** filed by Petitioners of the determinations issued by the Philadelphia CAO. Section 275.1(a)(4)(i) of the Regulations states:

> (i) *Right of appeal*. Therefore, the opportunity for a hearing will include the right of appeal from the following:
>
> (A) A denial, suspension or discontinuance in whole or in part.
>
> (B) A change in the amount of payment.
>
> (C) A denial, discontinuance, reduction or exclusion from a Departmental service program including the failure to take into account the client's choice of a service or a determination that he must participate in a service program.
>
> (D) The manner or form of payments, including restricted or protective payments. Exception: When the Department denies or discontinues a protective or vendor payment the right of appeal in this clause will not apply.
>
> (E) Undue delay in making a payment adjustment or acting upon a request or application.
>
> (F) Overpayment and reimbursement claims, including the computation of the amount of the claim and collection procedures.

(G) An action taken under the Child Support Enforcement Program (IV-D), that is, assignment or reassignment of support orders, reimbursement of delayed support payments, arrearages and the like.

(H) A denial of a request for a correction or a deletion in the case file.

55 Pa. Code § 275.1(a)(4)(i). These are the specific types of actions by the Department, CAO, or other agency, that will result in the invocation of the BHA's jurisdiction. The three appeals filed by Petitioners plainly fall within this jurisdiction.

Petitioners, however, also alleged that they were subject to discrimination, and there is no dispute that discrimination on the basis of disability is prohibited. Such prohibition exists in federal law, including in Title II of the ADA and Section 504 of the Rehabilitation Act, and in state law, as reflected in Chapter 107 of the Regulations. Section 107.1(b) of the Regulations sets forth the policy against discrimination and provides, in pertinent part:

(b) *General policy*. General policy relating to nondiscrimination is as follows:

(1) The prohibition against discrimination extends to all forms of assistance, including money payments and vendor payments for medical care, social services and information and referral services.

(2) The provisions governing the administration of public assistance are, and shall continue to be, designed to assure equal rights, benefits and opportunities to persons, regardless of race, color, national origin or handicap.

55 Pa. Code § 107.1(b). Section 107.3 of the Regulations outlines the requirements of this general policy, and subsection (c) thereof addresses the specific requirements relating to the processing of applications, stating:

19

The following requirements apply to Department personnel involved in the processing of applications:

(1) The methods employed in administering financial assistance and services are directed to enhancing and facilitating the participation of each individual applicant or recipient in the rights, benefits and opportunities available to him under the public assistance programs.

(2) Specifically prohibited are discriminatory practices because of race, color, national origin or handicap with respect to the use of physical facilities, intake and application procedures, caseload assignments, methods of determining eligibility and the amount of the grant, or entitlement to other benefits under the programs and the use of the grant and other benefits.

(3) An employe engaged in the administration of public assistance who in any way curtails, jeopardizes or infringes on the rights, benefits and opportunities of an individual applicant or recipient because of his race, color, national origin or handicap will be subject to disciplinary action.

55 Pa. Code § 107.3(c).

Finally, Section 107.4 of the Regulations identifies the "[p]rocedures to assure nondiscrimination of participating agencies . . . ," 55 Pa. Code § 107.4, and subsection (c) sets forth the complaint procedure for claims of discrimination. This procedure includes filing complaints with the United States Department of Health and Human Services (HHS) under federal regulations. 55 Pa. Code § 107.4(c)(1). Additionally, written complaints asserting discrimination by the Department or an agency participating in a program may be filed with either the Department or a CAO. 55 Pa. Code § 107.4(c)(2)(i). Where a complaint raises alleged discrimination by a CAO's staff,

the appeal and fair hearing process is made available to the client in the same way as it is for any other public assistance applicant or recipient who is dissatisfied with a decision or action in respect to granting or continuing public assistance aid and services. Reference should also be

made to Chapter 275 (relating to appeal and fair hearing and administrative disqualification hearings).

55 Pa. Code § 107.4(c)(2)(ii).

Thus, the Regulations do contemplate, in some respect, the filing of discrimination complaints with a CAO and the application of the appeal and fair hearing procedure of Chapter 275 of the Regulations, which include proceedings before administrative law judges of the BHA, *see* 55 Pa. Code § 275.4 (referring to the procedures for appeals and fair hearings, including the transmission the requests from the CAO to the BHA). However, we discern no reversible error in the ALJ concluding that he lacked the authority to resolve Petitioners' allegations of discrimination because these proceedings were **appeals** from CAO determinations.

In *MJZ-C v. Department of Public Welfare* (Pa. Cmwlth., No. 2547 C.D. 2009, filed August 25, 2010),[14] this Court held there was no error in an administrative law judge not addressing, in an appeal from a CAO notice discontinuing benefits, claims of discrimination, subsequent notices of discontinuance, and other arguments/claims unrelated to the current notice of discontinuance of benefits on appeal because they fell outside the scope of the proceeding before the administrative law judge. Slip op. at 7-8 & n.7. The petitioner in *MJZ-C* included in the appeal documents and administrative brief filed with the administrative law judge numerous allegations of discrimination and retaliation by the Department, the CAO in that case, and a prior CAO, and then reiterated some of those claims in the appeal documents filed with this Court. *Id.* at 3 n.1, 5 n.2. We explained that

---

[14] *MJZ-C*, an unreported panel decision of this Court, is cited as persuasive pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

21

> [u]nderlying many of the issues is [the p]etitioner's overarching averment that the current CAO's actions are part of a larger course of conduct by [the Department] to retaliate and discriminate against [the p]etitioner[, which were subject to ongoing litigation in federal court].
>
> . . . .
>
> [However,] [t]hese claims fall well outside the limited scope of the proceeding before the ALJ. . . .
>
> [Therefore,] [w]e conclude the ALJ did not err in declining to address these additional claims.

*Id.* at 7-8.

Similar to the petitioner in *MJZ-C*, Petitioners filed appeals from three determinations from the Philadelphia CAO that denied HCBS benefits. They included in those appeals and related filings numerous claims relating to Petitioners' "overarching averment that the [] CAO's actions are part of a larger course of conduct by [the Department and the CAO] to retaliate and discriminate against Petitioner[s]." *Id.*, slip op. at 7. Given the limited scope of the proceedings before the ALJ, *id.*, we cannot say that the ALJ erred in not resolving allegations that went beyond that scope.[15, 16]

---

[15] To the extent the ALJ's analysis could be read as stating the BHA **never** has jurisdiction to resolve written complaints of discrimination, such conclusion appears to be inconsistent with Section 107.4(c)(2)(ii) of the Regulations. However, as the complaints of discrimination here fell outside the scope of the proceedings before the ALJ, any error was harmless.

[16] Arguably, one claim that went unaddressed could be associated with the appeals: the assertion that the CAO discriminated against Campbell and Zied-Campbell by only listing Campbell's name on a notice of appeal knowing Campbell, due to his disabilities, was incapable of representing himself. (*See* C.R. at 249; Petition, Ex. 8 part 1 at 20.) However, Petitioners also seemingly (and contradictorily) question the inclusion of Zied-Campbell on notices and/or appeal documents related to Campbell's benefits. (C.R. at 256; Petition, Ex. 8 part 1 at 16, 33-34.) Given the conflicting allegations, any error the ALJ made in not addressing this claim was harmless.

2. Proceedings before the ALJ and the contents of the Certified Record

Petitioners raise various challenges to the proceedings before the ALJ and the contents of the Certified Record. We begin with Petitioners' assertion that the ALJ erred in considering Case Worker's testimony because she worked at the Philadelphia CAO's Parkside office and not at the Philadelphia CAO's Boulevard office, which was Petitioners' "CAO." A review of the record reveals that the Philadelphia CAO's Parkside office was responsible for "Long Term & Independent Services" benefits, i.e., HCBS benefits, and Petitioners were aware of the Parkside office's participation in this matter, although they maintained that they had never been "transferred" to that office. (*See* C.R. at 15-26; Petitioners' Appellate Br. at 20.) Ultimately, Case Worker testified with knowledge of Petitioners' ongoing MA benefits, Campbell's applications at issue, and the reasons for the Philadelphia CAO's determinations being challenged in these appeals. (C.R. at 15-26, 551-62.) A witness with personal knowledge of the subject on which they are testifying is admissible. *Gibson v. Workers' Comp. Appeal Bd. (Armco Stainless & Alloy Prods.)*, 861 A.2d 938, 947 (Pa. 2004) (citing Pennsylvania Rule of Evidence 602, Pa.R.E. 602). Accordingly, this is not a reason to reverse the ALJ's Decision.

Another challenge raised by Petitioners is that the ALJ would not admit the email from Zied-Campbell to PA IEB regarding withdrawing Campbell's application, submitted as part of Petitioners' 268-page brief. (Petitioners' Appellate Br. at 24-25.) However, this reflects a misunderstanding of what occurred. The ALJ would **not admit** that email a**s the CAO's exhibit** "C-1" because the CAO had not served Petitioners with that exhibit five days before the hearing, as required by the Regulations.[17] (*See* C.R. at 561-62; ALJ's Decision at 21.) The ALJ did,

---

[17] *See* 55 Pa. Code § 275.3(a)(3) (requiring that appellants have the opportunity "[t]o examine prior to the hearing . . . documents which the [CAO] . . . will introduce as evidence . . . .").

nevertheless, admit this email as a part of **Petitioners'** evidence as it had been included as an exhibit submitted by Petitioners. (*Id.*)

Similarly, Petitioners challenge the ALJ's alleged refusal to accept or consider their 268-page brief based on the statement that the ALJ would "not include the brief[, Exhibit A-32,] as an exhibit." (ALJ's Decision at 6.) This, too, is premised on a misunderstanding of the ALJ's actions. The ALJ's statement simply reflects that this brief would not be labeled an "exhibit," not that it was not being included or considered at all. A review of the ALJ's Decision and the Certified Record reflects that the 268-page brief was admitted and considered by the ALJ in resolving the appeals before him. That brief, and the exhibits attached thereto, are expressly identified in the ALJ's Decision and are included in the Certified Record. (*See* ALJ's Decision at 6-7; C.R. at 244-513.) Additionally, the ALJ identified the main issues and arguments made in that brief and either addressed them or indicated his belief that he lacked jurisdiction to do so. (ALJ's Decision at 7, 22-24, 26-27.) Accordingly, this is not a reason to reverse the ALJ's Decision.

This leads the Court to Petitioners' arguments related to the ALJ's alleged non-consideration and non-inclusion in the Certified Record of, among other filings, the entire 512-page brief submitted in February 2022 as part of their appeals.[18] The Court does not disagree that a portion of the 512-page brief, the motion for summary judgment, is not included in the Certified Record, although Petitioners have attached it, and the exhibits attached thereto, to the Petition as Exhibit 8. Notably,

---

[18] Also missing from the Certified Record are five motions submitted prior to the hearing that were addressed in the ALJ's Decision, (ALJ's Decision at 21-22). However, other than pointing out that these filings are not in the Certified Record, and attaching them to their brief, Petitioners do not assert any error in the ALJ's resolution thereof. Indeed, in the motion for summary judgment, Petitioners maintained that these motions were now "moot." (Petition, Ex. 8, part 1 at 1 n.1.)

Respondents have not objected to that attachment or asserted that this was not filed as a part of Petitioners' appeals. However, the exhibits attached to the motion for summary judgment are, and the ALJ expressly relied on at least one of those exhibits, A-18 – the email from Zied-Campbell withdrawing Campbell's application, in affirming the determination in Appeal #15.

The question then is whether the alleged failure of the ALJ to consider the motion for summary judgment requires us to reverse the ALJ's Decision or, as Petitioners request, exercise our original jurisdiction over the claims contained therein. Because Petitioners raised substantially the same arguments in the motion for summary judgment as they did in the 268-page brief and/or the issues are not within the narrow scope of the appeal proceedings before the ALJ, we believe neither is required.

Petitioners' 268-page brief included 10 issues asserting ways in which the Philadelphia CAO, the Department, and/or its employees and others, including employees of the Social Security Administration (SSA), engaged in discriminatory and retaliatory conduct toward Petitioners, and/or, alternatively, violated their due process rights and the FFCRA. (C.R. at 248-50.) Included therein was also an argument that Petitioners had good cause for not submitting the requested financial information to verify their resources. (*Id.* at 250.) The motion for summary judgment contained the same claims of discrimination, retaliation, and violations of Petitioners' due process rights and the FFCRA, as well as the good cause argument. (Petition, Ex. 8, part 1 at 4-5, 19-22.) Additionally, both set forth essentially the same arguments regarding the 10 issues raised, with those raised in the 268-brief being more thorough. (*See, e.g.*, Petition, Ex. 8, part 1 at 8-17; C.R. at 249-50, 252-54.) While the motion for summary judgment included an additional claim that the

Department allegedly violated "the mailbox rule" and United States Postal Service (USPS) Regulations because the USPS postmarks on the envelopes of numerous documents do not match the date of the private postage meter used by the Department and/or the date on the document itself, the alleged discrepancies in the dates were something that were pointed out in the 268-page brief. (*See*, *e.g.*, Petition, Ex. 8, part 1 at 5-6; C.R. at 246, 260-61.) There was also reference in the motion for summary judgment to Petitioners' Office of Civil Rights (OCR) complaint to the federal HHS after the filing of the 268-page brief and claim that the Department engaged in additional discriminatory and/or retaliatory conduct as a result. (Petition, Ex. 8, part 1 at 36-38.)

Given the overlap of the issues and arguments in the 268-page brief and the motion for summary judgment, and the fact that those issues and arguments were either addressed by the ALJ as being related to Campbell's appeals or exceed the scope of the narrow proceedings before the ALJ, *see MJZ-C*, slip op. at 7-8, we conclude this is not a basis to reverse the ALJ's Decision. Although the Court understands Petitioners' concerns that part of their filings was not included in the Certified Record, because the Department has not objected to those filings' attachment to the Petition or the Court's consideration thereof, we have done so.[19] That review reveals a substantial overlap in those documents, and the Court does not find, as Petitioners' request, a breakdown in the administrative process. However, we caution the Department to take more care in certifying its records to this Court.

---

[19] Arguably, one could view Petitioners' inclusion of the "omitted" items from the Certified Record in their Petition and the lack of objection by the Department to the citation to or reliance on those items, as being in accordance with Pennsylvania Rule of Appellate Procedure 1951(b), Pa.R.A.P. 1951(b) (authorizing parties, at any time, to supply to the Court items that were material to any party that may have been omitted from the agency record by stipulation).

### 3. Merits of ALJ's Decision

Petitioners argue that they never applied for HCBS benefits and, therefore, the notices had to relate to the improper termination of their MA benefits. However, as the ALJ found, based on Case Worker's credible testimony, Petitioners' MA benefits were active and never discontinued. (ALJ's Decision at 23 & FOF ¶ 15.) Thus, there was no evidence of the termination or discontinuation of their MA benefits. Additionally, while Petitioners argue they never applied for HCBS benefits, (Petitioners' Appellate Br. at 2), they also admit that they filed an application for benefits with PCA or PA IEB to obtain assistance with Campbell's care at home in July 2021, (Petition, Ex. 8, part 1 at 10; C.R. at 149 (letter from Petitioners to PCA regarding their request for "some assistance" for Campbell's "daily living"), 214 (referencing PCA and PA IEB in relation to Campbell's application for HCBS services), 355-56 (emails regarding Petitioners' July 2021 application for "Home Care for [Campbell]")). It may be that Petitioners were unaware that the benefits for which they were applying required the participation of the CAO. This is reflected in Zied-Campbell's November 5, 2021 email, following Campbell's application for benefits in November 2021, and responsive email from a representative from PA IEB. (C.R. at 205-06.) Therein, Zied-Campbell indicated she "didn't realize that this [application] was going to go to a CAO once again,"[20] to which the PA IEB representative responded, that "all the [w]aivers the IEB oversees [have an] enrollment process [that] requires a Medicaid Waiver application and those are

---

[20] However, emails sent to Zied-Campbell in July 2021 regarding Petitioners' request for "Home Health Care Services" plainly stated that "the welfare office" would be involved, that the application would be sent to that county office, and that the CAO would be asking for certain financial resource documents. (C.R. at 355-56.) This raises some question regarding Zied-Campbell's subsequent claim of a lack of knowledge that the application would be sent to the CAO.

27

processed by the [CAO]." (*Id.* at 206.) Not wanting to deal with a CAO again, Zied-Campbell asked the representative to "[p]lease close the application." (*Id.*) However, this does not mean that the HCBS applications were not made. From Case Worker's credited testimony, and Petitioners' own evidence, these applications were forwarded to the CAO, as it plays a role in their review and approval. (FOF ¶¶ 3-6; C.R. at 355-56.) Thus, we discern no error in the ALJ concluding that the CAO determinations here related to Campbell's applications for HCBS benefits.

As to the ALJ's dismissal of Appeal #13 as moot because there was no relief the ALJ could order where Campbell's MA benefits remained active and were not discontinued, Petitioners argue that an exception to the mootness doctrine should be applied here. They maintain the circumstances that led to Appeal #13 could happen again and are likely to evade review. (Reply Br. at 15.) We are not persuaded that this exception would apply, particularly where Petitioners do not explain why they could not simply file an appeal from any subsequent denial or discontinuance of benefits that would then be resolved in the normal course. Accordingly, there was no error in the ALJ dismissing Appeal #13 as moot.

As to Appeal #15,[21] the ALJ upheld the denial of the application because Zied-Campbell directed that the application be withdrawn in her email to a PA IEB representative requesting that the application be closed. (C.R. at 206-07.) Section 125.84(e)(2)(iii) of the Regulations states that "[t]he application process will end, and the application be disposed of, when one of the following has taken place: . . . [t]he applicant withdraws . . . the application." 55 Pa. Code § 125.84(e)(2)(iii). Thus, we discern no error in the ALJ's Decision denying Appeal #15.

---

[21] Petitioners prevailed on Appeal #14 and, therefore, are not aggrieved by that part of the ALJ's Decision.

4. Summary

After careful review of Petitioners' appellate arguments and for the foregoing reasons, we discern no error: in the ALJ not addressing Petitioners' discrimination claims in the course of these specific proceedings; in the ALJ's handling of the underlying proceedings; in the ALJ not separately addressing the arguments set forth in the motion for summary judgment; and in the ALJ dismissing Appeal #13 as moot and denying Appeal #15 based on Zied-Campbell's withdrawal of the application. Accordingly, the Final Administrative Action Order is affirmed.

We now turn to the original jurisdiction part of the Petition.

## III. PETITIONERS' ORIGINAL JURISDICTION CLAIMS OF DISCRIMINATION AND RETALIATION

*A. Petitioners' Claims*

The Petition sets forth the following allegations and claims[22] in our original jurisdiction, which, asserting violations of the ADA and the Rehabilitation Act by various government agency officials, appear to make that part of the Petition one filed pursuant to 42 U.S.C. § 1983 (Section 1983).[23] As noted above, and not disputed by Respondents, Petitioners have multiple disabilities and qualify as

___

[22] The Petition is very detailed and contains averments that are not relevant to our consideration of the Preliminary Objection and Application. Therefore, we set forth only that which is relevant to our consideration.

[23] Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

individuals with a disability for purposes of the ADA and the Rehabilitation Act. (Petition ¶¶ 15, 33.) Petitioners aver that the Department and Philadelphia CAO, and their employees, are required to follow the ADA, the Rehabilitation Act, and due process requirements of the United States Constitution and have an obligation to assure proper communication with individuals with disabilities and to not discriminate or retaliate against those individuals. (*Id.* ¶¶ 46, 49, 51-52, 57-58, 60-61.) Employees of the CAO also are obliged, Petitioners allege, "to assist persons [of] who[m] they have knowledge that are disabled, and whose files reflect those disabilities." (*Id.* ¶ 62.) Petitioners aver that the actions and inactions by the Department and the Philadelphia CAO and their employees reflect intentional discrimination against Petitioners in violation of the ADA. (*Id.* ¶¶ 53, 70.)

Relevant to the original jurisdiction portion of the Petition, Petitioners identify the following "issues": whether Respondents violated the ADA and Rehabilitation Act by "[f]ailing to apprise, educate and afford . . . Zied-Campbell in 2017 of the Pennsylvania [ABLE[24]] account when they knew she was qualified for said account . . ."; "continually conspir[ing] with government agencies (e.g. The [SSA]) to prevent . . . Zied-Campbell from obtaining her rightful Medicare benefits; and"

> from 2001 forward never inform[ing] or direct[ing] . . . Campbell as to the medical benefits he could have received from the Veterans Administration [(VA)], although from that time period they knew he was getting a non-service connected pension from the[ VA] leading to altering, stopping, or attempting to tamper with the rightful medical treatment of . . . Campbell.

---

[24] Relevantly, the ABLE account program, administered by the Pennsylvania Treasury Department, allows individuals who became disabled prior to the age of 26 and their families to open bank accounts into which up to $14,000 per year can be deposited (up to $511,000) without those accounts impacting the individual's receipt of government benefits, including Medicaid, and up to $100,000, without affecting their receipt of Social Security Insurance benefits. (Petition ¶¶ 117-18, 121; *see also* https://www.paable.gov (last visited July 31, 2024).)

(*Id.* ¶ 3.)

Petitioners additionally incorporate the claims raised in the motion for summary judgment that went unaddressed by the ALJ. (*Id.* ¶¶ 97, 101.) Count I of the Petition avers that Respondents discriminated and/or retaliated against Petitioners based on their disabilities in violation of the ADA by not receiving notice of their right to be free from discrimination based on their disabilities and by not notifying Zied-Campbell of the Pennsylvania ABLE account program. (*Id.* ¶¶ 103, 110, 114, 116.) Petitioners cite California's efforts to inform individuals with disabilities of the CalABLE account program as evidence that Respondents should have advised their beneficiaries of their eligibility for the Pennsylvania ABLE account program and their failure to notify all individuals who became disabled prior to the age of 26 constituted discrimination against Zied-Campbell and others similarly situated. (*Id.* ¶¶ 124-28.)

Count II avers that Respondents retaliated against Zied-Campbell for her filing litigation in this Court and in federal court, and a complaint with the OCR (OCR Complaint) with HHS. (*Id.* ¶¶ 130-32.) Petitioners aver that the Philadelphia Investigative HHS office sent its report to the Department on December 7, 2021, two days before the Philadelphia CAO notified Petitioners that Campbell's July 2021 application for HCBS benefits was denied, which they assert was issued in retaliation for the OCR Complaint. (*Id.* ¶¶ 133-34.) Petitioners also cite the FFCRA, its requirement that benefits be continued during the national medical emergency, and this Court's order in prior litigation reflecting Respondents' recognition of the same and claim retaliation by Respondents in violation of these provisions. (*Id.* ¶¶ 135-37.)

Additionally, Petitioners assert retaliation against Zied-Campbell in the nature of a phone call from the Philadelphia CAO on June 29, 2022, inquiring about Petitioners' receipt of a re-certification packet, that was made on the same day Petitioners filed a "Notice of Disagreement" in relation to Campbell's claim for VA benefits, which was being reviewed by a VA office in Wisconsin. (*Id.* ¶¶ 139-41.) Petitioners contend that "[i]t is possible" that the Department was "well aware that the lawyer who represented the SSA against . . . Zied-Campbell when she was in federal court in 2008 when [a] Federal [] Judge . . . remanded [a] case to the SSA in Zied-Campbell's favor is now an attorney . . . for the [VA]." (*Id.* ¶ 142.) It appears that Petitioners may also be connecting the above alleged potential knowledge to a call from the PCA on July 7, 2022, requesting to perform a wellness check on Campbell at Petitioners' home, which Zied-Campbell declined given "problems with this [] agency in the past" and the fact that Campbell was in the hospital. (*Id.* ¶¶ 143-44.) Despite having knowledge that Campbell was hospitalized, reflecting that he was being well-taken care of, Petitioners aver that PCA persisted, continuing to call and harass Zied-Campbell. (*Id.* ¶¶ 145-46.) When Zied-Campbell sent by email a copy of a power of attorney for Campbell from 2021 and a picture of Campbell reflecting he was fine, a PCA attorney indicated she did not receive the email, and PCA's director called indicating that PCA had to gain entrance to Petitioners' home "to close out the case" and "threatened Zied-Campbell with a [c]ourt [o]rder" despite being told that Campbell was in the hospital. (*Id.* ¶¶ 147-49.) Petitioners recount the PCA's other efforts to enter their property and obtain information about Campbell's condition, including by questioning the home health care nurse while the nurse was entering their property and following the nurse after she left Petitioners' property. (*Id.* ¶¶ 154-57.)

Finally, Petitioners assert that the "multiplicity of NOTICES" from the Philadelphia CAO and the Department, including letters from the acting director of the OIM relating to recertifying Petitioners for MA benefits during the public health emergency without providing information for benefits under the Supplemental Nutritional Assistance Program (SNAP), and the notices relating to the denial of Campbell's HCBS benefits, were in retaliation for the litigation and OCR complaint against the Department and Philadelphia CAO. (*Id.* ¶¶ 159-64, 180.)

Count III asserts a claim for discrimination against Petitioners by Respondents, incorporating the prior paragraphs, and averring that Respondents' actions were discriminatory in violation of article 26, section 1 of the Pennsylvania Constitution.[25] (*Id.* ¶¶ 165-66.) Petitioners acknowledge the limitation on damages set forth in Section 8553 of the Judicial Code, 42 Pa.C.S. § 8553, but argue this limitation is unconstitutional and should be inapplicable in claims involving violations of the ADA. (*Id.* ¶¶ 167-71.)

In Count V,[26] Petitioners additionally request that the Court include any other legal claim it can discern from their allegations or those made in **any** of their past cases, indicating they "should not suffer any consequences based upon their inability to know what other claims they should plead." (*Id.* ¶ 185.) For example, citing cases from state courts in Wisconsin and *John v. Philadelphia Pizza Team, Inc.*, 209 A.3d

---

[25] Article I, section 26 of the Pennsylvania Constitution provides: "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." PA. CONST. art. I, § 26. Notably, Pennsylvania courts do not recognize a private cause of action for monetary damages based on a violation of the Pennsylvania Constitution. *Mount Airy #1, LLC v. Pa. Dep't of Revenue & Eileen McNulty*, 154 A.3d 268, 280 n.11 (Pa. 2016).

[26] Count IV relates to the BHA having jurisdiction to address discrimination claims and the discrepancy in the record between the filing of the 268-page brief and the 512-page brief, which we addressed in the first part of the opinion.

380 (Pa. Super. 2019),[27] which Petitioners cite as a Pennsylvania Supreme Court case, Petitioners assert they think Respondents may have committed the tort of intentional infliction of emotional distress (IIED) causing Zied-Campbell to relapse in some of her prior psychological impairments. (*Id.* ¶¶ 185-87, 189-90.) Respondents also may, Petitioners aver, have engaged in "[n]egligence," and cite the elements of such a claim. (*Id.* ¶ 191.)

As relief, Petitioners request that they

> be exempt from any future re[]certifications pertaining to the receipt of Medicaid by the Commonwealth of Pennsylvania[,] the Department . . . and/or any [CAO] with those entities picking up the cost of any health insurance of [Petitioners] in full for the remainder of their lifetimes or the monetary equivalent of such . . . .

(*Id.* ¶ 3.) Petitioners also seek an award of "damages" for the intentional violation of the ADA. (*Id.* ¶ 104.)

On December 11, 2022, Petitioners filed the Application seeking, among other relief, "[j]udgment in [Petitioners'] favor based upon the failure of the parties to timely appear in this Court, failure to timely plead, defend or otherwise, and based upon the fact that the [Petition] is completely meritorious[,] and the relief requested should be granted."[28] (Application at 1.) Therein, Petitioners maintain they are entitled to judgment on the claims set forth in the Petition, as well as asserting new

---

[27] This Court is not bound by Superior Court decisions, but we may cite those decisions for their persuasive value. *Marshall v. Se. Pa. Transp. Auth.*, 300 A.3d 537, 540 n.2 (Pa. Cmwlth. 2023).

[28] The Application also seeks to disqualify Respondents' counsel, which we denied *supra*. *See supra* note 1. It also asks for the Court to dismiss, as untimely filed, the initial preliminary objections filed by Respondents; this Court denied that relief in its February 1, 2023 Memorandum and Order, noting that those preliminary objections were filed within 30 days of Petitioners' filing of an amended notice to plead. (2/1/2023 Mem. & Order at 1.) Thus, we will focus on those arguments that we have not already resolved.

claims relating to due process and whether they received, or will ever receive, a fair proceeding before the BHA. (*Id.* at 14-17.) They cite the relief requested in paragraphs 3 and 104 of the Petition and note that sovereign immunity has been abrogated for claims based on the ADA. (*Id.* at 17-18.) In a December 23, 2022 filing, Petitioners amend their Application to add "'other relief' previously requested in the [Petition] and inadvertently omitted in the" Application. (Amended Application at 1.) In this amending document, Petitioners add that they want the Court to declare that the Philadelphia CAO should have sent a notice advising all individuals with disabilities, particularly Zied-Campbell, of the Pennsylvania ABLE account program in 2017, and its failure to do so injured Zied-Campbell. (*Id.* at 2-3.) Petitioners reiterate their various claims from the Petition and the 512-page brief, and their assertion that those claims are meritorious and that they are entitled to relief thereon. (*Id.* at 3-8.)

### B. Respondents' Preliminary Objection (PO) and Answer to the Application

Respondents demur to Petitioners' claims, arguing the original jurisdiction part of the Petition should be dismissed as Petitioners have failed to state a claim upon which relief can be granted. According to Respondents, the claims "do not violate any law and do not satisfy any law for recovery or relief." (Respondents' PO ¶ 1.) Respondents contend that although "Petitioners have disabilities, [] their pleadings do not allege they were denied the Department's services, programs[,] . . . or otherwise discriminated by the Department, and thus were not denied for reason of their disability." (*Id.* ¶ 4.)

Specifically, Respondents assert that two of Petitioners' claims are based on Respondents not providing them information about Pennsylvania ABLE accounts and benefits through the VA, but, Respondents note, neither are Department

programs. Respondents contend that Petitioners fail to cite legal authority that the failure to provide this information was a violation of their rights, and that "[t]here is none." (*Id.* ¶ 7.) Similarly, Petitioners' claim that the Department is "conspiring" with other government entities, like the SSA, to deny Petitioners' "benefits administered by the federal government," likewise fails to state a claim against them, Respondents argue, because the benefits are "not Department programs or services." (*Id.* ¶¶ 8-9.) Respondents additionally assert that, contrary to Petitioners' averments that they were denied accommodations needed for their disabilities, the ALJ's Decision and "exhibits that Petitioners supplied [with the Petition] show that Petitioners were provided accommodations and not denied services." (*Id.* ¶¶ 10-11.)

As for Petitioners' claims that they are being discriminated against because the Department will not waive verification requirements for Medicaid and SNAP benefits, Respondents argue those claims fail because those "programs have federal regulations that require verification, and the ADA does not permit the [] Department . . . to waive verification requirements without meeting an exception in federal law or receiving waiver approval from federal agencies. *See* 7 C.F.R. § 273.2 and 42 C.F.R. §§ 435.940-435.965 [(2024)]." (*Id.* ¶¶ 12-13.) Further, Respondents maintain Petitioners' claim that the Department did not advise them of their right to be free from discrimination is belied by Petitioners' own exhibits, which demonstrate that such notice is provided as part of the applications and notices. (*Id.* ¶¶ 14-15.)

Ultimately, Respondents argue Petitioners cannot state a claim because they "have not been excluded from the [] Department['s] . . . programs or services," "Petitioners are currently receiving benefits from the [] Department . . . ," "and no recovery is available . . . ." (*Id.* ¶¶ 16-17.) Respondents maintain that if it is apparent

36

that an allegation contained within a pleading did not occur, such allegation is insufficient to survive a demurrer. (*Id.* ¶ 18.) Respondents assert that "[h]ere, no recovery is possible under the law based on what Petitioners allege under the [ADA] or any other statute[.]" (*Id.* ¶ 21.)

In their answer to Petitioners' Application, Respondents reiterate their position that Petitioners have failed to state any legally cognizable claim in the Petition. They argue that Petitioners cite out-of-state caselaw, which is not controlling, and is otherwise distinguishable, and the Pennsylvania cases Petitioners cite related to claims for IIED are inapplicable to the claims Petitioners raise. Respondents suggest that, if Petitioners need additional services, accommodations, or the assistance of a disability advocate, Petitioners should contact the CAO, the Department's consumer hotline, or its counsel. They conclude their answer by offering to have the matter remanded for a hearing on the issue of disability accommodations.

### C. *Petitioners' Answer to the PO*

Petitioners filed an answer to the PO, first asserting that the PO should be stricken as unauthorized and in violation, in part, of this Court's February 1, 2023 Order, dismissing Respondents' earlier filed preliminary objections as moot and directing Respondents to file an Answer and/or their own Application for Summary Relief. (Answer to PO at 5.) They contend no further preliminary objections were permitted by the February 1, 2023 Order, reconsideration of which was not requested. In addition, Petitioners observe the PO should not be accepted because it contains an incomplete sentence in paragraph 21. (*Id.*) Petitioners then cite to a variety of internet posts from the Department's website, unavailable before, regarding continued eligibility during the COVID-19 emergency, and additional

37

claims that Respondents are violating the law or court orders. (*Id.* at 6-8.) They reiterate some of their claims regarding California's efforts regarding its CalABLE account program and notification of possible eligibility, and that there was some discrimination in their application for SNAP benefits. (*Id.* at 8-9.) Petitioners additionally assert that because Respondents did not file an answer to Petitioners' Application, served on December 11, 2023, within 30 days, all of the allegations contained therein were admitted. (Answer to PO at 4.[29]) Included in those "admitted" allegations was Petitioners' assertions that their claims were meritorious, and they were entitled to relief. (*Id.* at 4-5.)

*D. The Parties' Briefs*

Respondents supplement their arguments in the PO in their brief, asserting that Petitioners lack a clear right to relief and that the current litigation is just one more in the string of legal actions brought against them by Petitioners in state and federal court.[30] (Respondents' Br. at 5-7.) Petitioners in that litigation, Respondents

---

[29] Petitioners cite to "210 Pa. Code 1035" in their Answer to the PO as support, (Answer to PO at 5), but they might be referring to Pennsylvania Rule of Civil Procedure 1035.3(d), Pa.R.Civ.P. 1035.3(d), which authorizes a court to grant summary judgment if no answer to a motion for summary judgment is filed.

[30] The United States Court of Appeals for the Third Circuit noted in 2013 that Petitioners "have a long history of litigating claims concerning the administration of their federal and state medical and disability benefits. *See, e.g.*, *Zied-Campbell v. Richman*, 428 F[. ]App[']x[] 224 (3d Cir.[ ]2011), *cert. dismissed*, [565] U.S. [961] . . . (2011); *Campbell v. Soc. Sec. Admin.*, 446 F[. ] App[']x[] 477 (3d Cir.[ ]2011), *cert. denied*, [565] U.S. [892] . . . (2011)." *Zied-Campbell v. Pennsylvania*, 514 F. App'x 154 (3d Cir. 2013). That history began in the mid-2000s and has continued, both in state and federal courts. *See, e.g.*, *Zied-Campbell v. Comm'r of Soc. Sec.*, 739 F. App'x 140 (3d Cir. 2018); *In re Campbell*, 669 F. App'x 629 (3d Cir. 2016); *Zied-Campbell v. Dep't of Hum. Servs.* (Pa. Cmwlth., No. 1537 C.D. 2017, filed March 22, 2019); *Zied-Campbell v. Dep't of Hum. Servs.* (Pa. Cmwlth., No. 1811 C.D. 2016, filed June 1, 2017) (per curiam); *Zied v. Barnhart*, (M.D. Pa., No. 3:06-CV-2305, filed June 20, 2008) 2008 WL 11005450; *Zied-Campbell v. Richman*, (M.D. Pa., No. 1:04-CV-0026, filed March 20, 2007) 2007 WL 1031399. Indeed, **(Footnote continued on next page…)**

assert, have averred similar claims of retaliation and discrimination, which have been dismissed or denied, and the same should occur here because Petitioners' claims are frivolous. In particular, Respondents argue that, in order to be entitled to compensatory damages, the ADA requires intentional discrimination, meaning "deliberate indifference," rather than "negligence or bureaucratic inaction," and none of Petitioners' allegations support a finding of intentional discrimination. (*Id.* at 7, 15 (citing *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248 (3d Cir. 2013)).) Moreover, Respondents maintain Petitioners have not averred any facts that their mental disabilities prevented them from being able to comply with recertification requests or were the basis of any discrimination.

Respondents reiterate that they are not responsible for the Pennsylvania ABLE accounts program and VA benefits, nor are they responsible for the denial of benefits that other entities, like the SSA, may make, or the mandatory regulatory verification requirements from which Petitioners seek to be relieved. They similarly restate that, contrary to Petitioners' claims and as evidenced by Petitioners' filings, Petitioners have received numerous accommodations from Respondents, have been informed of their right to be free from discrimination, and continue to receive MA benefits (and, therefore, it cannot be said that Petitioners were denied benefits due to their disabilities). Respondents argue that Petitioners maintain they should be treated differently from all other applicants and recipients of public benefits by being relieved of all the verification requirements and that their benefits be determined using "stale" information. (*Id.* at 13.) Even if Petitioners' averments stated a claim for discrimination under either the ADA or the Rehabilitation Act, Respondents contend they would not be liable because granting Petitioners their requested relief,

Petitioners' brief identifies "related" past cases filed in federal courts, courts of common pleas, this Court, and our Supreme Court. (Petitioners' Br., Cover & 14-16 (unpaginated).)

39

lifetime MA benefits without ever having to be recertified, "would require a fundamental modification [of the program or benefit] or an undue burden" by continuing Petitioners' benefits even where they may no longer be eligible. (*Id.* (quoting *Juvelis v. Snider*, 68 F.3d 648, 653 (3d Cir. 1995) (alteration by Respondents)).) Ultimately, Respondents contend Petitioners' claims are "frivolous" and Petitioners are not entitled to any relief, including monetary damages. (*Id.* at 15.)

Respondents also assert that this Court does not have subject matter jurisdiction over any claims for damages arising from violations of the ADA or Rehabilitation Act as they arise in trespass. (Respondents' Br. at 14-15 (citing, e.g., *Harris v. Pa. Dep't of Corr.*, 178 A.3d 945, 947 (Pa. Cmwlth. 2018); *Mazin v. Bureau of Pro. & Occupational Affs.*, 950 A.2d 382, 391 (Pa. Cmwlth. 2008); *Miles v. Beard*, 847 A.2d 161, 164 (Pa. Cmwlth. 2004)).) For these reasons, Respondents maintain their PO should be sustained, the Application be denied, and the original jurisdiction portion of the Petition be dismissed.

Petitioners also supplemented their Application and answer to the PO with the arguments set forth in their brief. Therein, Petitioners assert nine "Questions Involved," not all of which line up with the claims raised in the Petition and Application.[31] Petitioners challenge Respondents' filing of the PO at all, as well as

---

[31] Some of the issues, such as the ALJ's authority to address discrimination claims under the Regulations, overlap with Petitioners' appellate claims, which have already been addressed and will be not discussed further. Furthermore, to the extent Petitioners assert additional claims and facts in their brief, such as those about the PCA, we review only those claims and facts set forth in the pleadings and the materials attached thereto, which, at this point, is the Petition and its exhibits. *See Scarnati v. Dep't of Env't Prot.*, 220 A.3d 723, 728 (Pa. Cmwlth. 2019) ("Our review of preliminary objections is limited to the pleadings and proper attachments."); *Allen v. Pa. Bd. of Prob. & Parole*, 207 A.3d 981, 984 n.4 (Pa. Cmwlth. 2019) ("For purposes of an application for summary relief, the record is the same as that for a summary judgment motion. . . . The record includes the pleadings and other documents of record, such as exhibits.").

the timing of the filing of the answer a day late, and point to several "mistakes" contained within Respondents' brief in support of their PO filed on April 21, 2023, and other filings, as bases for "totally disregarding" the PO.[32] (Petitioners' Br. at 7-11, 14, 34-37, 40-42.) They reiterate that Respondents failed to timely respond to the December 13, 2023 Application and should not be permitted to do so now. (*Id.* at 13-14, 27.) As for Respondents' citation to other cases involving Petitioners, Petitioners observe that this Court has never assessed monetary damages in any of those cases; those cases did not involve the allegations made in this matter; and those cases were wrongly decided and should be reopened by the Court, and the relief requested therein be granted to Petitioners. (*Id.* at 15.)

On the merits of their claims, Petitioners cite the anti-discrimination language of Section 504 of the Rehabilitation Act and Section 202 of the ADA, along with the requirement that government agencies are to provide accommodations based on disability, to argue they have stated a claim and are entitled to compensatory damages. (*Id.* at 68-72.) Petitioners maintain that Respondents intentionally failed to include in the August 2021 recertification packet information about SNAP benefits, thereby affecting Petitioners' ability to receive SNAP benefits in addition to their MA benefits. (*Id.* at 53.) Petitioners assert this was discrimination against them based on their disability. (*Id.* at 53-54.) Petitioners argue that Respondents have conspired with the SSA to refuse Zied-Campbell Medicare benefits and that a

---

[32] For example, Petitioners raises issues regarding the type of staple used in a filing, a missing page in Respondents' brief, and Respondents' apparent typographical error identifying their brief in support of their PO as "Petitioner's [sic] brief as reflecting improper actions by Respondents that warrant dismissal of Respondents' PO. (Petitioners' Br. at 9-11.) We do not view these mistakes as bases to overrule the PO. Additionally, to the extent Petitioners reiterate their argument that the initial PO filed by Respondents were untimely, we resolved that issue in our February 1, 2023 Memorandum & Order, holding that Respondents' filings were timely. We will not revisit that decision.

false application for Social Security benefits was filed in Zied-Campbell's name. (*Id.* at 55-56.) As to the failure to advise Petitioners of the Pennsylvania ABLE account program, Petitioners point to the response to their OCR complaint, that HHS thought Petitioners should have been informed of the Pennsylvania ABLE account program and the fact this response was sent to the Department two days before the December 7, 2021 determination, as supporting their discrimination claim. (*Id.* at 67-68.) They maintain, citing a 2017 letter from the director of the Center for Medicare & Medicaid Services (CMS), that the Department, not the Department of Treasury, was supposed to advise potentially eligible persons of the ABLE account program because the letter references what "states" and "state agencies" should do and for ABLE accounts to be disregarded for purposes of Medicaid. (*Id.* at 97-98, Ex. 2 (attached to Petitioners' Brief but not to the Petition).) Petitioners argue that a July 2017 memo from a Department official reflects the Department's knowledge of the Pennsylvania ABLE account program at that time. (*Id.* at 101-02 (citing Petition, Ex. 8, part 3 at 70-73).)

Further, Petitioners maintain that Respondents have violated Petitioners' rights under the ADA and the Rehabilitation Act, and continued to do so, thereby giving rise to a right to relief for all violations, including those raised in past complaints. (*Id.* at 74-80.) Petitioners also argue they have stated a claim that Respondents have violated "the Mailbox rule" and various USPS regulations as reflected in the discrepancies in the mailing dates on their documents and the postmark dates on the envelopes in which those documents are mailed. (*Id.* at 102-04.) Petitioners contend Respondents intentionally use differing dates as a form of discrimination against Zied-Campbell, whom they allege has a "sensitivity to the receipt of USPS mail." (*Id.* at 103.) They further argue they have established

42

intentional discrimination by Respondents so as to recover compensatory damages. (*Id.* at 116-17 (citing *Galloway v. Superior Ct. of Dist. of Columbia*, 816 F. Supp. 12 (D.D.C. 1993)).) Relatedly, Petitioners assert that if they are entitled to damages, the cap on the amount of damages that can be recovered under Section 8553 of the Judicial Code is unconstitutional and should be invalidated, as has occurred in other states, albeit not in the context of violations of the ADA and Rehabilitation Act. (*Id.* at 109-15.)

### E. General Legal Principles

Before the Court are Respondents' PO and Petitioners' Application, both seeking an end to this matter before it proceeds to trial. Pennsylvania Rule of Appellate Procedure 1516(b), Pa.R.A.P. 1516(b), authorizes the filing of preliminary objections in original jurisdiction cases. In reviewing a PO in the nature of a demurrer, as Respondents present, the Court's review "is limited to the pleadings and proper attachments." *Scarnati v. Dep't of Env't Prot.*, 220 A.3d 723, 728 (Pa. Cmwlth. 2019). "Preliminary objections are deemed to admit all well-pled material facts and any inferences reasonably deduced therefrom." *Id.* Courts are not, however, "bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion within a petition for review." *Id.* Conclusory statements that are not supported by factual averments are insufficient to withstand a demurrer. *Garber v. Pa. Dep't of Corr. Sec'y*, 851 A.2d 222, 224 n.4 (Pa. Cmwlth. 2004); *Bullock v. Horn*, 720 A.2d 1079, 1082-83 (Pa. Cmwlth. 1998). "In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them." *Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010). A preliminary objection in the nature of demurrer challenges "the legal

sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted." *Id.*

An application for summary relief may be filed pursuant to Pennsylvania Rule of Appellate Procedure 1532(b), Pa.R.A.P. 1532(b), at any time after the filing of a petition for review. Summary relief is properly granted where "the pleadings, depositions, answers to interrogatories, and admission[s] on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Ducjai v. Dennis*, 656 A.2d 102, 107 (Pa. 1995) (internal quotation marks and citation omitted). Summary relief "will be denied where material facts are in dispute or the applicant is not clearly entitled to judgment as a matter of law." *Allen v. Pa. Bd. of Prob. & Parole*, 207 A.3d 981, 984 n.4 (Pa. Cmwlth. 2019). "The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Marks v. Tasman*, 589 A.2d 205, 206 (Pa. 1991). The record in summary relief matters is the same as for an application for summary judgment and consists of "the pleadings and other documents of record, such as exhibits." *Allen*, 207 A.3d at 984 n.4. Summary relief may be entered only in those cases "where the right is clear and free from doubt." *Musser v. Vilsmeier Auction Co., Inc.*, 562 A.2d 279, 280 (Pa. 1989).

### F. Analysis

#### 1. The Court's Jurisdiction

We begin with Respondents' contention that this Court lacks jurisdiction over the Petition because it is essentially a tort action seeking monetary damages under Section 1983. Initially, we observe that Respondents did not raise this issue in their PO but in their brief in support thereof. However, it is well settled that challenges

to a court's subject matter jurisdiction are not waivable and may be raised at any time, either by a party or the court sua sponte. *Domus, Inc. v. Signature Bldg. Sys. of PA, LLC*, 252 A.3d 628, 636 (Pa. 2021); *Commonwealth v. Jones*, 929 A.2d 205, 208 (Pa. 2007). The parties cannot confer subject matter jurisdiction on a court. *Mastrocola v. Se. Pa. Transp. Auth.*, 941 A.2d 81, 88 (Pa. Cmwlth. 2008).

Section 761(a)(1)(v) of the Judicial Code vests original jurisdiction in this Court over "all civil actions or proceedings[ ] [a]gainst the Commonwealth government, including any officer thereof, acting in his official capacity, except" "actions . . . in the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign . . . immunity and actions . . . in the nature of assumpsit relating to such actions or proceedings in the nature of trespass." 42 Pa.C.S. § 761(a)(1)(v). We have held that a Section 1983 action based on alleged violations of Section 202 of the ADA seeking monetary damages filed against the Department of Corrections and several of its employees fell within this jurisdictional exclusion and belonged in the court of common pleas in the first instance. *Harris*, 178 A.3d at 947, 949. This is because, as our Supreme Court has stated,

> the clear intent of the General Assembly is that actions against the Commonwealth or its officers acting in their official capacity for money damages based on tort liability are outside the original jurisdiction of the Commonwealth Court and are properly commenced in the [c]ourts of [c]ommon [p]leas.

*Id.* at 949 (quoting *Balshy v. Rank*, 490 A.2d 415, 420-21 (Pa. 1985)). Thus, in *Harris*, this Court transferred the matter to the court of common pleas pursuant to Section 5103(c) of the Judicial Code, 42 Pa.C.S. § 5103(c).[33] We transferred a

---

[33] Section 5103(c) states:

**(Footnote continued on next page…)**

45

similar petition, raising a claim alleging violations of the ADA by the Bureau of Professional and Occupational Affairs and its employees, to the pertinent court of common pleas on the basis that this Court lacked jurisdiction. *Mazin*, 950 A.2d at 387-88, 391.

In situations where a petition filed in this Court's original jurisdiction seeks both injunctive or other equitable relief and monetary damages, the court of common pleas will have original jurisdiction "where the core of the complaint is a tort action . . . regardless of an ancillary request for declaratory relief." *Wilson v. Marrow*, 917 A.2d 357, 362 (Pa. Cmwlth. 2007) (citing *Stackhouse v. Commonwealth*, 832 A.2d 1004 (Pa. 2003)). In *Stackhouse*, the plaintiff (Stackhouse) filed a three-count complaint against her employer, the Pennsylvania State Police, and her supervisors, alleging that her constitutional rights were violated by an improper internal investigation undertaken in connection with her application for a job promotion. In addition to monetary damages and attorney's fees, Stackhouse sought a declaration that her privacy and reputational interests were harmed by the investigation and an injunction restraining the use of her private information for any purpose or preventing the defendants from engaging in similar investigative processes in the future. *Stackhouse*, 832 A.2d at 1005-06. Concluding that it lacked jurisdiction over the complaint, the court of common pleas transferred the matter to this Court. *Id.* at 1006. This Court dismissed the matter, noting that Stackhouse's complaint was essentially a "tort action in the nature of trespass for money damages as redress for

---

If an appeal or other matter is taken to, brought in, or transferred to a division of a court to which such matter is not allocated by law, the court shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper division of the court, where the appeal or other matter shall be treated as if originally filed in the transferee division on the date first filed in a court or magisterial district.

42 Pa.C.S. § 5103(c).

an unlawful injury" and, therefore, outside the Court's original jurisdiction. *Id.* at 1005-06.

On appeal, our Supreme Court addressed Stackhouse's assertion that this Court should have considered the action in trespass pursuant to its ancillary jurisdiction described in Section 761(c) of the Judicial Code because she sought declaratory relief in addition to monetary damages. *Id.* at 1007. The Supreme Court rejected this argument, stating:

> The sum and substance of [Stackhouse]'s complaint, then, is that her privacy and reputational interests were invaded when state police officials unlawfully delved into her intimate inter-personal relationships during an internal affairs investigation, and that she is entitled to compensation accordingly. In these circumstances, we do not believe the inclusion of a count for declaratory or injunctive relief premised upon the same events can properly be understood to transform the complaint from one sounding in trespass into the type of matter contemplated by *Fawber*,[34] or by the Legislature, as belonging within the Commonwealth Court's original jurisdiction.

*Id.* at 1008 (emphasis added). The Supreme Court further reasoned that "permitting jurisdictional questions to turn solely upon the styling of claims within a complaint would arguably permit forum shopping through pleading." *Id.* Accordingly, the

---

[34] *Fawber v. Cohen*, 532 A.2d 429 (Pa. 1987). In *Fawber*, the Supreme Court held that the courts of common pleas do not have original jurisdiction over actions against state officials for civil rights violations that seek equitable or declaratory relief, as those actions are not in the nature of a trespass. *Id.* at 430-31. However, unlike the plaintiff in *Stackhouse* and Petitioners here, the plaintiffs in *Fawber* did not seek money damages; rather, they sought a declaration that certain administrative regulations were unconstitutional and an order precluding the enforcement of the regulations. *Id.* at 433. The Supreme Court, in *Stackhouse*, further distinguished *Fawber*, noting that, unlike the constitutional challenge to the administrative regulations in *Fawber*, Stackhouse's "request for judicial redress stems from a series of events specific to a single departmental inquiry, and is explicitly predicated upon the lack of any regulatory or other legal foundation for such actions." *Stackhouse*, 832 A.2d at 1008.

47

Supreme Court remanded the matter to the court of common pleas for further proceedings. *Id.* at 1009.

In *Miles*, an inmate (Miles) filed an action in a court of common pleas against, among others, the Secretary of Corrections, asserting that his constitutional rights were violated when the Department failed to provide him with kosher meals. 847 A.2d at 163. In addition to an order directing the Department to serve him kosher meals, Miles requested compensatory and punitive damages under Section 1983, declaratory and injunctive relief, and any other relief the common pleas court deemed just. *Id.* The court of common pleas dismissed the complaint, in relevant part, for lack of jurisdiction. *Id.* at 163-64. On appeal, this Court considered the Supreme Court's holding in *Stackhouse* and concluded that, even though Miles sought equitable relief, the substance of Miles' complaint was based on the Section 1983 claim for monetary damages. *Miles*, 847 A.2d at 164-65. In so concluding, we noted that the allegations Miles relied upon for his equity and Section 1983 actions were clearly the same and that Miles had specifically included a request for money damages in his complaint. *Id.* at 165.

Here, the facts pled by Petitioners implicate an action under Section 1983 because they allege violations of the laws of the United States, primarily the ADA and the Rehabilitation Act, by persons acting under the color of state law, the various officials and employees of Respondents. *See Harris*, 178 A.3d at 947 n.4. While Petitioners somewhat vaguely request equitable relief in the nature of declarations that, for example, Respondents should have advised Zied-Campbell of the Pennsylvania ABLE account program or that Respondents "should be exempt from any future re-certifications pertaining to the receipt of Medicaid," (Petition ¶ 3), their "request for judicial redress stems from a series of events . . . and is explicitly

predicated upon the lack of . . . [statutory] foundation for such actions." *Stackhouse*, 832 A.2d at 1008. The "sum and substance of" Petitioners' claims relate to their contentions that they have a right to be free from discrimination as set forth in the ADA and the Rehabilitation Act, along with the Department's Regulations, and they should be compensated for those violations through compensatory damages through the payment of Petitioners' health insurance for life without regard to their eligibility, and/or the monetary equivalent of that insurance. Like the Supreme Court concluded in *Stackhouse*,

> [i]n these circumstances, we do not believe the inclusion of [requests] for declaratory or injunctive relief premised upon the same events can properly be understood to transform the complaint from one sounding in trespass into the type of matter contemplated by *Fawber*, or by the Legislature, as belonging within the Commonwealth Court's original jurisdiction.

832 A.2d at 1008. Accordingly, we hold that subject matter jurisdiction over the original jurisdiction portion of the Petition lay with the Court of Common Pleas of Philadelphia County, not this Court. Thus, as we did in *Harris* and *Mazin*, we transfer the matter to that court in accordance with Section 5103(c) of the Judicial Code.

## IV.   CONCLUSION

For the foregoing reasons, there was no error in the Final Administrative Action Order upholding the ALJ's Decision, and the Final Administrative Action Order is affirmed. As for the original jurisdiction portion of the Petition, this Court lacks subject matter jurisdiction over the claims set forth therein, Respondents' PO thereto, Petitioners' Application, and Respondents' answer. Therefore, those claims, the outstanding PO, Petitioners' Application, and Respondents' answer are

49

transferred to the Court of Common Pleas of Philadelphia County pursuant to Section 5103(c) of the Judicial Code.

_____
**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mindy Jaye Zied-Campbell, on  
behalf of herself and Dennis John  
Campbell,  
                       Petitioners  

               v.

The Commonwealth of Pennsylvania;  
PDHS Secretary/Acting Secretary in  
her official capacity, The Pennsylvania  
Department of Human Services, and  
all the Departments contained within  
the PDHS to include, but is not  
limited to the Philadelphia County  
Assistance Office(s), the PDHS  
Hearings & Appeals Office,  
                    Respondents

:  
:  
:  
:  
:  
:  
:    No. 451 M.D. 2022  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  

# **O R D E R**

    **NOW**, September 3, 2024, upon review of the appellate jurisdiction portion of the Petition for Review (Petition) filed by Mindy Jaye Zied-Campbell and Dennis John Campbell (together, Petitioners), the Final Administrative Action Order of the Department of Human Services, Bureau of Hearings and Appeals, is hereby **AFFIRMED**. To the extent that Petitioners seek the disqualification of Respondents' counsel in their Application for Relief (Application), that relief is **DENIED**. Additionally, upon review of the original jurisdiction portion of the Petition, Petitioners' corresponding Application, Respondents' Preliminary Objection, and the parties' respective answers, this Court concludes it lacks subject matter jurisdiction over that part of the Petition and, accordingly, that part is

transferred to the Court of Common Pleas of Philadelphia County in accordance with Section 5103(c) of the Judicial Code, 42 Pa.C.S. § 5103(c).

_____
**RENÉE COHN JUBELIRER,** President Judge

2